In the Matter of DELMAR Box Co., INC., Appellant. ÆTNA INSURANCE COMPANY et al., Respondents; NATIONAL COMMERCIAL BANK AND TRUST COMPANY, Respondents, et al., Defendants.

Argued June 7, 1955; decided July 8, 1955.

*Roland Ford* for appellant. I. Under the arbitration law as amended in 1952 an appraisal is now arbitrable. (*Hurst* v. *Litchfield*, 39 N. Y. 377; *Finucane Co.* v. *Board of Educ. of City of Rochester*, 190 N. Y. 76; *Greason* v. *Keteltas*, 17 N. Y. 491; *People ex. rel. Union Ins. Co.* v. *Nash*, 111 N. Y. 310; *Miller* v. *President of Junc. Canal Co.* 53 Barb. 590, 41 N. Y. 98; *Silver* v. *Western Assur. Co.*, 164 N. Y. 381; *Bishop* v. *Agricultural Ins. Co.*, 130 N. Y. 488; *Yendel* v. *Western Assur. Co.*, 21 Misc. 348; *United States* v. *Robeson*, 9 Pet. [U. S.] 319; *President of D. & H. Canal Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250.) II. The arbitration law can be adapted to appraisals. (*Matter of American Ins. Co.* [*Wasserman*], 208 App. Div. 168.) III. Since the contract of insurance was valid when made, subsequent events or defenses are immaterial in respect to an appraisal arbitration. (*Matter of Kahn* [*National City Bank*], 284 N. Y. 515; *Wilcox* v. *American Tel. & Tel. Co.*, 176 N. Y. 115.)

*F. Walter Bliss, Warner M. Bouck* and *Francis J. Holloway* for respondents. I. The statutory provisions for appraisal of loss under a standard fire insurance policy may not be enforced as a compulsory arbitration under the arbitration law. (*Matter*

of American Ins. Co. [Wasserman], 208 App. Div. 168; Matter of Fitzgerald [Continental Ins. Co.], 275 App. Div. 453; Syracuse Sav. Bank v. Yorkshire Ins. Co., 301 N. Y. 403; Matter of Sigelman v. Travelers Fire Ins. Co., 279 App. Div. 771; Matter of Keppler v. Nessler, 225 App. Div. 99.) II. Assuming, arguendo, but not admitting that compulsory arbitration is a proper remedy in some circumstances, the order of the Special Term was erroneously granted because the policies under their own terms had been rendered entirely void and unenforcible by the fraudulent acts of appellant. (Matter of Behrens [Feuerring], 296 N. Y. 172; Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76; Matter of Kallus [Ideal Novelty & Toy Co.], 292 N. Y. 459; Matter of Zimmerman v. Cohen, 236 N. Y. 15; Alpert v. Admiration Knitwear Co., 304 N. Y. 1; Matter of Kramer & Uchitelle, Inc., 288 N. Y. 467; Matter of Kahn [National City Bank], 284 N. Y. 515; Wilcox v. American Tel. & Tel. Co., 176 N. Y. 115.)

FULD, J. Whether the insured under a standard New York fire insurance policy may compel the insurer to comply with the provision for appraisal contained in such a policy, is the question for decision.

Delmar Box Company, doing business in a frame building situated on land leased from the New York Central Railroad in New Scotland, New York, carried insurance in the aggregate amount of about $23,000, issued by a number of insurance companies. On April 13, 1954, a fire occurred, the alleged loss amounting to some $33,000. In each of the policies was a provision for appraisal in the event of loss — in the form required by subdivision 6 of section 168 of the Insurance Law — which reads in this way:

" Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then

appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.''

After the insurance companies, respondents herein, had refused to consent to an appraisal, Delmar initiated this proceeding, pursuant to section 1450 of the Civil Practice Act, for an order compelling them to comply with the policies' appraisal provisions. At the same time, it commenced a separate action at law, upon the policies, to recover the amount of the fire loss. In opposition to the petition, respondents, by answer and affidavit, set forth their reasons for rejecting the appraisal demand. They claimed that petitioner had misrepresented and concealed material facts, had sworn falsely in relation to the subject matter of the loss and, in addition, had no insurable interest in the building since it was situated on land leased from the New York Central Railroad under a lease which had expired.

The Appellate Division, reversing the court at Special Term, dismissed the petition on the ground that the provisions for appraisal '' do not constitute enforcible agreements to arbitrate controversies arising thereunder,'' and with that disposition we agree.

A number of basic distinctions have long prevailed between an appraisement under the standard fire policy and a statutory arbitration. An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, upon which judgment may be entered after judicial confirmation of the arbitration award (Civ. Prac. Act, § 1464), while the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action. (See *Matter of American Ins. Co.*, 208 App. Div. 168, 170–171.) Appraisal proceedings are, moreover, attended by a larger measure of informality (see *Strome* v. *London Assur. Corp.*, 20 App. Div. 571, 573, affd. 162 N. Y. 627),

and appraisers are " not bound to the strict judicial investigation of an arbitration." (See *Matter of American Ins. Co., supra,* 208 App. Div. 168, 171.) Arbitrators are required to take a formal oath (Civ. Prac. Act, § 1455), and may act only upon proof adduced at a hearing of which due notice has been given to each of the parties (Civ. Prac. Act, § 1454). They may not predicate their award upon evidence garnered through an *ex parte* investigation of their own, at least unless so authorized by the parties. (See *Berizzi Co.* v. *Krausz,* 239 N. Y. 315.) Appraisers, on the other hand, are not required to take an oath. (See *Syracuse Sav. Bank* v. *Yorkshire Ins. Co.,* 301 N. Y. 403, 411; *Wurster* v. *Armfield,* 175 N. Y. 256, 264; *Williams* v. *Hamilton Fire Ins. Co.,* 118 Misc. 799.) They are likewise " not obliged to give the claimant any formal notice or to hear evidence "; and they may apparently proceed by *ex parte* investigation, so long as the parties are given an opportunity to make statements and explanations to the appraisers with regard to the matters in issue. (See *Kaiser* v. *Hamburg-Bremen Fire Ins. Co.,* 59 App. Div. 525, 530, affd. 172 N. Y. 663; *Townsend* v. *Greenwich Ins. Co.,* 86 App. Div. 323, 326–327, affd. 178 N. Y. 634; *Matter of American Ins. Co., supra,* 208 App. Div. 168, 171.)

Furthermore, in an arbitration, all the arbitrators, if there be more than one, "must meet together and hear all the allegations and proofs of the parties " (Civ. Prac. Act, § 1456). The standard appraisal clause, in contrast, specifically recites that the umpire is not to participate in the appraisal in all cases, but is only to pass on such differences as there may be between the appraisers designated by the respective parties. In addition, the vacatur of an arbitration award invariably results in a new arbitration (Civ. Prac. Act, § 1462; see *Matter of Fletcher,* 237 N. Y. 440, 449), whereas after an appraisal award has been set aside without any fault on the part of the insured, he is not required to submit to any further appraisement but is free to litigate the issues in an action at law on the policy. (See *Gervant* v. *New England Fire Ins. Co.,* 306 N. Y. 393, 400.)

And, at least until 1941, the decisions were uniformly to the effect that the standard provision in a fire insurance policy for appraisal did not constitute an agreement for arbitration and was not specifically enforcible under the statutory procedure applicable to contracts for arbitration. (See *Matter of American*

*Ins. Co., supra,* 208 App. Div. 168; see, also, *Wurster* v. *Armfield, supra,* 175 N. Y. 256, 264; *Strome* v. *London Assur. Corp., supra,* 20 App. Div. 571, 572, affd. 162 N. Y. 627; *Townsend* v. *Greenwich Ins. Co., supra,* 86 App. Div. 323, 326–327, affd. 178 N. Y. 634.) The appraisal provisions were recognized and enforced by the courts only to the extent that the insured was prevented from maintaining an action on the policy in the event of his failure to comply therewith. (See, e.g., *Silver* v. *Western Assur. Co.,* 164 N. Y. 381.) If the defaulting party happened to be the insurance company, the insured could disregard the appraisal provisions and present all the issues for determination in an action at law upon the policy. (See *Uhrig* v. *Williamsburgh City Fire Ins. Co.,* 101 N. Y. 362.) The insured, however, had no remedy available to compel the insurance company specifically to comply with the appraisal provisions. (Cf. *Matter of Fletcher, supra,* 237 N. Y. 440.)

In 1941, section 1448 of the Civil Practice Act, the opening section in the article governing arbitration proceedings, was amended by adding thereto the following (L. 1941, ch. 288): "Such submission or contract [for settlement by arbitration of a controversy between the parties] may include questions arising out of valuations, appraisals or other controversies which may be collateral, incidental, precedent or subsequent to any issue between the parties."

The Appellate Division for the third department — the same court which made the determination here — held in 1949 that the amendment effected an extension of the provisions governing arbitration to an agreement for appraisal under a fire insurance policy. (See *Matter of Fitzgerald [Continental Ins. Co.],* 275 App. Div. 453.) However, that decision was short-lived, for, in the very next year, this court expressed a contrary view in the case of *Syracuse Sav. Bank* v. *Yorkshire Ins. Co. (supra,* 301 N. Y. 403). "We see nothing in section 1448 of the Civil Practice Act as amended in 1941," Judge Dye there wrote (301 N. Y., at pp. 410–411), "requiring the appraisal authorized by section 168 of the Insurance Law to be treated as an arbitration proceeding. * * * There is nothing in the policy provision relating to appraisal which gives an appraiser the status of an arbitrator * * *. It is well established that the determination of a fire loss is not an arbitration proceeding". (See, also.

*Matter of Sigelman* [*Travelers Fire Ins. Co.*], 279 App. Div. 771.)

It is clear, therefore, that the 1941 amendment to section 1448, while authorizing the inclusion of questions arising out of valuations or appraisals in a contract " to settle by arbitration " a controversy between the parties, did not have the effect of converting the informal appraisal provided for by the standard fire policy into an arbitration proceeding.

It is urged, however, that the extension of the arbitration statute to fire insurance appraisals has been accomplished by a further amendment to section 1448, enacted in 1952, which inserted the words " or independent of " in the sentence added in 1941, so that the latter now reads as follows (L. 1952, ch. 757) : " Such submission or contract may include questions arising out of valuations, appraisals or other controversies which may be collateral, incidental, precedent, subsequent to, *or independent of* any issue between the parties." But it is manifest that the new words " independent of " add nothing, as respects the problem here presented, to the words " collateral " or " incidental," and that, consequently, no greater effect can be given to the 1952 change than has been accorded to the 1941 modification. Neither amendment discloses any legislative design to alter the settled rule that " the determination of a fire loss [by appraisal] is not an arbitration proceeding ". (See *Syracuse Sav. Bank* v. *Yorkshire Ins. Co., supra,* 301 N. Y. 403, 411.)

It is a cardinal principle of statutory interpretation that the intention to change a long-established rule or principle is not to be imputed to the legislature in the absence of a clear manifestation. (See *Homnyack* v. *Prudential Ins. Co.,* 194 N. Y. 456, 460; *Seligman* v. *Friedlander,* 199 N. Y. 373, 376.) The consequence of applying the statute governing arbitration to fire insurance appraisals would entail, not only radical alteration of the settled practice in appraisal proceedings, but actual abrogation of the greater informality which has long prevailed therein. There is no doubt that the legislature may make such changes if it sees fit, but no such design may be ascribed to that body in the absence of a clearer showing than is to be found in this amendatory statute.

There is thus no indication whatever that the legislature intended to make applicable to fire insurance appraisals the

more formal practice prevailing in arbitration with regard to such matters as oaths, notice and hearing, the sittings of the arbitrators, the entry of judgment upon confirmation of an award or the consequences following upon the vacatur of an award. (Cf. *Matter of Fletcher, supra,* 237 N. Y. 440, 449.) Reliance is placed upon the views expressed by the assemblyman who introduced the bill in 1952, but those views cannot serve as a reliable index to the intention of the legislators who passed the bill. It is sufficient to note that they were stated, not in the course of debate on the floor of the legislature, but in a memorandum submitted to the governor after the passage of the bill, and there is no showing that the other legislators were aware of the broad scope apparently intended for the bill by its sponsor. (Cf. *Matter of Morse [Bank of America],* 247 N. Y. 290, 302–303; *Woollcott* v. *Shubert,* 217 N. Y. 212, 221–222; 2 Sutherland on Statutory Construction [3d ed., Horack, 1943], § 5011.)

It may, perhaps, be desirable to provide a procedure whereby the insured may obtain specific enforcement, as against the insurance company, of the agreement for appraisal. If such be its aim, the legislature may accomplish it by a statute clearly and specifically drawn for that purpose. A court cannot, however, read that design into the statute here involved, particularly when the result would be, not merely to permit the enforcement of such appraisal provisions, but to effect the wholesale importation, into appraisement practice, of the entirely different procedure governing arbitration.

The order should be affirmed, with costs.

Conway, Ch. J., Desmond, Dye, Froessel, Van Voorhis and Burke, JJ., concur.

Order affirmed.